**Owen F. Duffy, Esq.**
*Attorney for the Plaintiff*
*Probulk Carriers Limited*
5 Penn Plaza, 19th Floor
New York, New York 10001
Telephone: (516) 721-8793
Telefax:     (212) 235-7022
Email: Owen@ODuffy-Law.com

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PROBULK CARRIERS LIMITED, | : | Civil Action: 14-CV-8338 (LAK) |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| MARVEL INTERNATIONAL MANAGEMENT AND TRANSPORTATION, | : | |
| | : | |
| Defendant. | : | |

## ATTORNEY'S DECLARATION
## IN OPPOSITION TO MOTION TO QUASH SUBPOENAS

I, Owen F. Duffy, under penalty of perjury as prescribed in 28 U.S.C. § 1746, do hereby declare follows:

1.      I am attorney at law of the State of New York, and I am admitted to practice before this Court.

2.      I am the attorney for the Plaintiff Probulk Carrriers Ltd. (hereinafter "Plaintiff" or "Probuk"), and I am fully familiar with the facts and circumstances of this case.

3.      Except as where specifically indicated, I make this declaration upon personal knowledge.

4.      I submit this Declaration in Opposition to Non-Party witness Tolga Karacelik's (hereinafter "Karacelik") Motion to Quash Subpoenas.

### THE PLAINTIFF HAS OBTAINED A SIGNIFICANT JUDGMENT AGAINST MARVEL INT'L MANAGEMENT AND TRANSPORTATION

5.      This case arises from a time charter of an ocean-going vessel known as the M.V. IOANTHI, which the Defendant Marvel International Management and Transportation (hereinafter "Defendant" or "Marvel) had hired from Probulk in May of 2008. *See*, D.E # 1, Verified Petition to Recognize, Confirm and Enforce a Foreign Arbitration Award dated October 17, 2014.

6.      Probulk claimed that Marvel breached the terms and conditions of the charter party, and the parties arbitrated the dispute in London, pursuant to the terms and conditions of the charter party and the terms of the London Maritime Arbitrators Association. *See*, D.E. 1, Verified Petition to Recognize, Confirm and Enforce a Foreign Arbitration Award dated October 17, 2014 at ¶ 22 and Ex. C thereto.

7.      On 28 January 2013, the London arbitration tribunal rendered a final arbitration award in favor of the Petitioner Probulk and against the Respondent Marvel, finding that the Respondent Marvel had repudiated the charter party

causing Petitioner Probulk to suffer damages. *See*, D.E. # 1, Verified Petition to Recognize, Confirm and Enforce a Foreign Arbitration Award dated October 17, 2014 at ¶s 22 to24 and Ex. C thereto.

8.      As provided for in the Final Arbitration Award, the London arbitration tribunal awarded and directed the Respondent to pay the sum of $8,860, 293.50, plus interest, the costs of the arbitration and the costs of the award. *See*, D.E. # 1, Verified Petition to Recognize, Confirm and Enforce a Foreign Arbitration Award dated October 17, 2014 at ¶ 24 and Ex. C thereto at pages 3 & 4.

9.      On March 6, 2013, the London Arbitration Tribunal issued a Supplementary Award to correct an omission in the Final Arbitration Award, by which the London Arbitration Tribunal awarded and directed:

> ""that the charterers [Marvel] shall pay to the owners [Probulk] the sum of $9,496,481.00 (Nine million four hundred and ninety-six thousand four hundred and eighty one United States Dollars) together with interest thereon at the rate of 5% per annum and pro rata at three-monthly rests from 15 August 2009 until the date of payment."
> And,
>
> "that this our Supplementary Arbitration Award shall be incorporated onto and form a part of our said Final Arbitration Award dated 28 January 2013 but the remainder of our said Final Arbitration Award remains unaltered."

10.     *See,* D.E. # 10, at Exhibit 3, Certified copy of the Supplementary Arbitration Award, dated March 6, 2013.

11.     Despite demand Probulk, Marvel failed to make any payment to satisfy the Final Arbitration Award dated 7 May 2008 and the Supplementary Arbitration

Award dated 28 January 2013. *See*, D.E. # 1, Verified Petition to Recognize, Confirm and Enforce a Foreign Arbitration Award dated October 17, 2014 at at ¶ 25.

12.     This case was initiated in this Court on October 17, 2014 when Probulk filed a Verified Petition to Recognize, Confirm and Enforce the Foreign Arbitration Award that had been rendered in favor Probulk and against Marvel. *See*, D.E. # 1.

13.     Pursuant to Fed. Rule of Civ. P., Rule 12(a)(1), Marvel's time to serve an answer and/or respond to the Verified Petition to Recognize, Confirm and Enforce a Foreign Arbitration Award expired on November 17, 2014.

14.     Marvel did not request, nor was it granted, any extension of time to respond to the Petition to Recognize, Confirm and Enforce a Foreign Arbitration Award, and the Respondent Marvel did not answer the Verified Petition and has not otherwise appeared in this action.

15.     On February 10, 2016, the Clerk of the Court issued, and entered on the docket, a Clerk's Certificate of Default, which stated: "The default of the defendant is hereby noted." *See*, D.E. # 5, Clerk's Certificate of Default as filed on February 10, 2016.

16.     On February 18, 2016, Probulk filed a motion in this court to obtain a default judgment against Marvel in the amount of $12,795,093.65. *See*, D.E. #s 9, 10 & 11.

17.     On February 28, 2016, this Honorable Court entered an Order granting Probulk's Motion for a Default Judgment against Marvel. *See*, D.E. # 12.

## THE PLAINTIFF IS ATTEMPTING TO DISCOVER
## THE LOCATION OR DISPOSITION OF THE DEBTOR'S PROPERTY THAT MAY
## BE PURSUED TO SATISFY THE SUBSTANTIAL JUDGMENT AGAINST MARVEL

18.     In the fall of 2009, while the arbitration proceedings between Probulk and Marvel were underway in London, there were various reports in the maritime press that a Greek company known as Metrostar sold two ships, which were to be built by the Jinse Shipyard in South Korea, to Marvel. *See e.g.* Exhibit A, Ship Chartering report from September 8, 2009.

19.     Upon information and belief, Marvel paid a significant sum as a down payment to Metrostar for the two new ships that were being.

20.     In late 2008 and through 2009, the international shipping business, along with many businesses other than shipping, suffered a severe decline because of the global financial crisis, which eventually forced the Jinse Shipyard to stop operations and seek the protection of the courts of South Korea.

21.     The Jinse Shipyard never completed the construction of the vessels that were to be delivered to Marvel and the two vessels were never delivered to Marvel.

22.     It was reported in the maritime press that, pursuant to the contractual arrangements between Metrostar and Marvel, Metrostar was to pay a refund of approximately $10,000,000.00 back to Marvel for the two ships that were never built by the Jinse Shipyard.

23.     Upon information and belief, Metrostar did refund the approximate sum of $10,000,000.00 to Marvel for the for the two ships that were never built by Jinse Shipyard.

24. The payment of the approximate sum of $10,000,000.00 was made by Metrostar to Marvel in the summer of 2010, which again was at a time while Probulk was still pursuing its claim against Marvel in London Arbitration.

25. Upon information and belief, Levent Karacelik, who is the principal of Marvel and father of the movant Tolga Karacelik, directed the proceeds the Marvel received from Metrostar in 2010 away from Marvel's accounts and, instead, Levant Karacelik used the proceeds to fund other enterprises and endeavors, including but not limited to films being produced and/or directed by his son Tolga.

26. Upon information and belief, Levent Karacelik stripped Marvel of its assets so as to avoid paying creditors, such as Probulk, and so as to render Marvel judgment proof.

27. Although Marvel is still registered to do business in New York as a Foreign Limited Liability Company, the defendant Marvel is no longer actively doing business in the shipping business

28. Probulk has some sources who have knowledge of Marvel's operations and who have substantiated the points raised in ¶s 18 to 26, but Probulk is pursuing judgment enforcement discovery to obtain further evidence in order to further corroborate and verify its claims.

### THE PLAINTIFF HAS A GOOD FAITH BELIEF THAT NON-PARTY TOLGA KARACELIK HAS INFORMATION AND ACCESS TO DOCUMENTS THAT ARE RELEVANT TO PROBULK'S JUDGMENT ENFORCEMENT EFFORTS

29. As noted above, Levent Karacelik is the Chief Executive Officer, and self-described principal, of the Defendant Marvel.

6

30.     As noted above and conceded by the movant in his own declaration, non-party witness Tolga Karacelik is the son of Levent Karacelik. *See* D.E. # 18 at ¶ 16.

31.     Notwithstanding Tolga Karacelik's claims of non-involvement with the defendant Marvel and his father's businee, in the fall of 2007, Levent Karacelik told Tradewinds (a prominent maritime newspaper) that his son, Tolga Karacelik had already joined him in the business. *See*, Exhibit B, Report from Tradewinds dated September 6, 2007 at page 3.

32.     Later, in January of 2009, Levent Karacelik caused a company known as Marvel Shipping USA, LLC to be created pursuant to the laws of Delaware and this company was registered to do business in New York as a Foreign Limited Liability Company.

33.     Beginning in 2009 and through the first month of 2011, Marvel Shipping USA operated from an office in Connecticut as, *inter alia*, an agent for the defendant Marvel.

34.     Upon information and belief, Tolga Karacelik was the sole or majority shareholder of Marvel Shipping USA and, contrary to his statement that he has continuously resided in Turkey for the past 32 years, it is known that Tolga Karacelik was living in New York City during the period when he was operating Marvel Shipping USA during 2009 and through the end of 2010.

35.     Marvel Shipping USA, although still registered to do business in New York, ceased operations in the early part of 2011 and is no longer actively doing business.

36.     Tolga Karacelik has first hand knowledge of when and to whom Metrostar remitted the refund payment in the approximate amount of $10,000,000.00, as referred to in ¶ 23 herein, to Marvel.

37.     Upon information and belief, Tolga Karacelik has first hand knowledge of how the payment from Metrostar was diverted from Marvel's business and how the payment was used to fund other enterprises and endeavors of his father, Levent Karacelik, including but not limited to the financing of Tolga Karacelik's first feature film entitled "Toll Booth."

38.     On the basis of the information set forth herein, at ¶s 28 to 37, the subpoenas that are the subject of this motion were not issued for purposes of harassment; on the contrary, the subpoenas were issued in furtherance of Probulk's efforts to satisfy the significant judgment that it has obtained against the defendant Marvel which is now a defunct entity that has avoided paying its creditors.

## NON-PARTY WITNESS TOLGA KARACELIK WAS PROPERLY SERVED WITH A DEPOSITION SUBPOENA AND A SUBPOENA DUCES TECUM

39.     On March 14, 2016, the Clerk of Court for the Southern District of New York issued two subpoenas in this civil action.

40.     The first subpoena was to Tolga Karacelik, and it was a Subpoena to Testify at a Deposition in a Civil Action on April 20, 2016 in Boston. *See*, Exhibit C.

41.     The second subpoena was to Tolga Karacelik, and it was a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action at an office in Boston on April 20, 2016. *See*, Exhibit D.

42.     As noted in the attachment to Exhibit D, Tolga Karacelik was requested to produce documents relating to: his employment or positions with the various Marvel companies; documents evidencing Marvel's purchase of vessels; payments made by Marvel for the the vessels; the transfer of the contracts for the vessel new buildings; the refund payments made by Metrostar to Marvel; and, the use of the funds refunded by Metrostar. *See*, Exhibit D at Attachment A to Subpoena Duces Tecum listing only seven categories of documents that were being requested.

43.     The Subpoenas referred to herein were properly and personally served by a Massachusetts Constable on Tolga Karacelik on March 17, 2016 in Boston, Massachusetts. *See*, Exhibit E, Proof of Service, and the proper witness fees were tendered.

44.     Non-party witness Tolga Karacelik has not made any objection that the subpoenas were not properly served or they are overbroad.

## ANY BURDEN OF COMPLIANCE WITH THE SUBPOENAS TO NON-PARTY WITNESS TOLGA KARACELIK CAN BE MINIMIZED

45.     The issue presented in this Motion to Quash is not whether the subpoenas were properly served (they were), but is a question of whether the place of compliance presents an undue burden for the non-party witness and, if so, whether the subpoenas can be modified to achieve a just result that would minimize any burden on the movant.

46.     The movant, non-party witness Tolga Karacelik is a sophisticated person, who travels the world and, indeed, visits places in the United States such as Boston and Salt Lake City to show his films. *See*, D.E. # 16 at pages 3 & 4 of 37.

47.     It is submitted that, in accordance with the points set forth in the accompanying Memorandum of Law, the *subpoena duces tecum* can be modified to allow him to produce the documents at a location, to be agreed, in Istanbul, Turkey that is not more than 100 miles from where he resides or works.

48.     It is further submitted that, and again in accordance with the points set forth in the accompanying Memorandum of Law, the subpoena can be modified to allow Mr. Karacelik to submit to a deposition, after the documents are produced, during his next visit to the United States if he will be again visiting the United States in the near future or, if not, requiring him to submit to a a videotape deposition in Istanbul, Turkey where he resides and works.

Dated: April 6, 2016

Respectfully submitted,

/Owen F. Duffy, Esq.
*Attorney for the Plaintiff Probulk Carriers Limited*
5 Penn Plaza, 19th Floor
New York, New York 10001
Telephone: (516) 721-8793
Telefax:    (212) 235-7022
Email: Owen@ODuffy-Law.com