UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PROBULK CARRIERS LIMITED,

                            Plaintiff,


            -against-                                        14-cv-8338 (LAK)


MARVEL INTERNATIONAL MANAGEMENT AND
TRANSPORTATION,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/13/16

## MEMORANDUM OPINION

        Appearances:


                    Owen F. Duffy
                    *Attorney for Plaintiff*


                    Serkan Acikgoz
                    SASA LAW OFFICE, PLLC
                    *Attorneys for Tolga Karacelik*


LEWIS A. KAPLAN, *District Judge*.

        This judgment enforcement proceeding is before the Court on questions concerning

the enforceability of subpoenas served on a foreign national temporarily present in the United States.


                            *Facts*

        On February 28, 2016, this Court granted plaintiff's motion for a default judgment

recognizing, confirming and enforcing against defendant an arbitration award and directing it to pay

2

$12,795,093.65 plus interest and costs.

On March 17, 2016, plaintiff served Tolga Karacelik, a Turkish citizen, with two subpoenas in Boston, Massachusetts, where he had come to attend a film festival.  The subpoenas are an attempt to obtain evidence for the enforcement of the arbitration award confirmed by this Court.  And there appears to have ben ample reason to seek disclosure from Karacelik, who admittedly is the son of a principal of the defendant–judgment debtor and, according to plaintiff, has been involved in business with his father and appears to have relevant knowledge.

One of the subpoenas is for deposition testimony and the other for production of documents.  Both were issued by this Court.  Both require compliance in Boston on April 20, 2016.  Karacelik moves to quash.  For the most part, his arguments are baseless.  In the last analysis, however, the Court modifies the subpoenas in certain respects.

1.     Karacelik first argues that "[t]he Federal Rules of Civil Procedure do not allow for the service of subpoenas on foreign nonparty witnesses."[1]  He is mistaken.  Federal Rule of Civil Procedure 45(b)(2) provides that "[a] subpoena may be served at any place within the United States."  It does not distinguish between witnesses who are citizens or residents of the United States and witnesses who are not.[2]

---

[1] DI 16, at 2.

[2] 9 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 45.22[1], at 45-51 (3d ed. 2015) (presence of individual within district is sufficient to subject that individual to service of a subpoena, unless the individual is immune from service); *see also, e.g., First American Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 20 (2d Cir. 1998) (rejecting due process challenge to subpoena served on foreign partnership by service on a partner present in New York); *Kadic v. Karadzic,* 70 F.3d 232, 247 (2d Cir.1995), *cert. denied,* 518 U.S. 1005 (1996) (upholding exercise of jurisdiction over citizen of foreign country served while visiting New York).

3

2.     Karacelik next contends that the subpoenas should be quashed because they are "a transparent attempt to circumvent The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters."[3]  Again, he is wrong:[4]

> The Hague Convention is not the exclusive means for obtaining discovery from a foreign entity. *Société Nationale Industrielle Aérospatiale v. United States District Court,* 482 U.S. 522, 539–40, 107 S.Ct. 2542, 2553, 96 L.Ed.2d 461 (1987). Nor is the Convention necessarily the means of first resort. *Id.* at 541–42, 107 S.Ct. at 2554–55. The Supreme Court in *Aérospatiale* declined to announce any fixed rule on this subject, at the same time suggesting that concerns of international comity require that "American courts ... take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Id.* at 546, 107 S.Ct. at 2557.

Here, the subpoenas call for Karacelik, who was in the United States when he was served, to testify and produce documents in Boston, where he was served.  No foreign sovereign has expressed any interest in the matter.  And, as evidenced below, the Court "demonstrates due respect" for the "special problem" confronted by Karacelik by virtue of his alleged residence in Turkey.

3.     Next, Karacelik contends that enforcement of these subpoenas would be unduly burdensome because he is a non-party "living halfway across the world" and is being called upon to provide evidence for "litigation arising out of transactions that have no connection to the United States."[5]  But that is not a substantial argument for several reasons.

First, this litigation arises in consequence of a maritime arbitration concerning

---

[3]     *E.g.,* DI 16, at 3.

[4]     *First Am. Corp.,* 154 F.3d at 21.

[5]     DI 21, at 5.

4

a charter party between plaintiff and defendant, both of which are registered to do business in New York. While the charter party required arbitration of any disputes in London under English law,[6] the arbitration comes within the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Turkey, the United States and the United Kingdom all are signatories to that Convention. Accordingly, the parties to the case were or, in any case, should have been well aware that the prevailing party in any arbitration between them could seek enforcement of the award in New York, among many other places, and that New York was a likely forum in view of the fact that both parties are licensed to do business here. Thus, while the transactions out of which the dispute arose may have had nothing to do with New York, litigation here concerning recognition and enforcement of the award was within the contemplation of the parties.

Second, there is substantial reason to suppose that Karacelik, contrary to his suggestions, is not the stranger to this matter that he purports to be. He admits that his father is a principal of the defendant. And plaintiff has adduced evidence that more than supports the suspicion that Karacelik himself has first hand information and documents relevant to enforcement of the arbitral award.[7]

Third, Karacelik's claims of undue burden are entirely conclusory. Certainly the obligation for sitting for a deposition is not, in and of itself, burdensome. And Karacelik has given no reason to think that the search for responsive documents would take an inordinate amount of time or require the expenditure of substantial sums.

---

[6]     DI 1, Ex. B, cl. 17, 48.

[7]     Duffy Decl. [DI 19] ¶¶ 29-38

5

4.      There is, however, one more substantial issue raised by each subpoena.  Rule 45(c) provides in relevant parts that a subpoena may command a person to attend a deposition or to produce documents no more than 100 miles from where that person "resides, is employed, or regularly transacts business in person."  The point of the addition of those provisions is to avoid imposition of unreasonable travel burdens.  Applied literally, however, they could well have the effect of preventing, for example, the enforcement of a subpoena (a) duly served on a foreign national (b) on the steps of the issuing courthouse (c) calling for a deposition within 100 yards of the place of service (d) during the witness's otherwise planned stay in the United States because that foreign national – although physically present  quite near the place of the deposition – neither resides, nor is employed, nor regularly transacts business there.  Thus, there is substantial reason to believe that the Rule should not be construed to require that absurd result.  Fortunately, however, there is no need to reach that question here.

Rule 45(d)(3) permits a court to modify a subpoena that "requires a person to comply beyond the geographical limits specified in Rule 45(c)."[8]  And that is the appropriate course here,[9] as plaintiff readily acknowledges.

*   *   *

---

[8]  *See also* 9 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 45.25[1], at 45-54 (3d ed. 2015) ("[P]lace of service is not relevant to place of compliance.").

[9]  *See id.* § 45.50[5], at 45-77 (3d ed. 2015) ("[M]odification is generally preferred over quashing of a subpoena.").

6

Accordingly,

1.      The document subpoena is modified to require that Karacelik produce the documents at 10:00 a.m. on April 26, 2016 or such other time to which the parties agree by written stipulation filed with the Court at

(a)      Any place agreed upon by the parties in a written stipulation filed with the Court or, if no such stipulation is filed on or before April 19, 2016,

(b)      A place in Istanbul, Turkey, to be fixed by the Court by subsequent order on application by the plaintiff.

2.      The deposition subpoena is modified to require that Karacelik appear for and submit to a deposition

(a)      Commencing on a date and at a time and place agreed upon by the parties in a written stipulation filed with the Court or, if no such stipulation is filed on or before April 19, 2016,

(b)      Commencing on a date and at a time and place in Istanbul, Turkey, to be fixed by the Court by subsequent order on application by the plaintiff.

The deposition shall be recorded on video and, if the parties so stipulate in writing or the Court later so orders, may be conducted by video conference.

3.      Karacelik shall comply with the subpoenas as modified by (a) this order and (b) written stipulations or subsequent order or orders of this Court, as the latter case may be.

Karacelik is hereby placed on notice that any disobedience of the subpoenas or this or any subsequent order(s) of this Court is punishable as contempt of court and may subject him to arrest and/or criminal prosecution.

SO ORDERED.

Dated:          April 13, 2016

_____
Lewis A. Kaplan
United States District Judge